# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DEMAREAH OWENS,

                Plaintiff,

v.

MONTREAL ALEXANDER, LAUREN PACHMAYER, and JOHN DOE,

                Defendants.

Case No. 24-CV-716-JPS

**ORDER**

      Plaintiff Demareah Owens ("Plaintiff"), a former prisoner, filed a pro se complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights. ECF No. 1. On July 25, 2024, the Court screened Plaintiff's complaint and allowed Plaintiff to proceed on the following claim: Eighth Amendment deliberate-indifference claim against Defendants Lauren Pachmayer ("Pachmayer"), Montreal Alexander ('Alexander"), and Curtis for their indifference to the serious risk of Plaintiff's self-harm. ECF No. 8 at 5. On August 9, 2024, the Wisconsin Department of Justice ("DOJ") accepted service for Defendants Pachmayer and Alexander; the DOJ did not accept service for Defendant Curtis because it was unable to identify this defendant with the information provided. ECF No. 10. On September 18, 2024, the Court directed the Clerk of Court to replace Defendant Curtis with John Doe to allow Plaintiff additional time to identify this defendant. ECF No. 19.

      On September 3, 2024, Defendants Alexander and Pachmayer ("Defendants" hereinafter) filed a motion for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies as to the Eighth

Amendment claim. ECF No. 14. The motion for summary judgment is now fully briefed, ECF Nos. 20, 22, and ready for disposition. For the reasons explained below, the Court will conduct an evidentiary hearing to resolve a factual dispute as to whether Plaintiff exhausted his administrative remedies.[1]

1.  **STANDARD OF REVIEW**

    1.1  **Summary Judgment**

    Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

    1.2  **Exhaustion of Prisoner Administrative Remedies**

    The Prison Litigation Reform Act ("PLRA") establishes that, prior to filing a lawsuit complaining about prison conditions, a prisoner must exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). To do so, the prisoner must "file complaints and appeals in the

---

[1] Plaintiff's response brief additionally argues that he is entitled to judgement as a matter of law on the merits. ECF No. 20. However, the Court does not consider this argument because the Court has yet to issue a scheduling order in this matter and discovery is not yet complete.

place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). He must do so precisely in accordance with those rules; substantial compliance does not satisfy the PLRA. *Id.*; *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005). A suit must be dismissed if it was filed before exhaustion was complete, even if exhaustion is achieved before judgment is entered. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). The exhaustion requirement furthers several purposes, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, giving the parties the opportunity to develop the factual record, and reducing the scope of litigation. *Smith v. Zachary*, 255 F.3d 446, 450–51 (7th Cir. 2001). Failure to exhaust administrative remedies is an affirmative defense to be proven by a defendant. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005).

### 1.2.1 Inmate Complaint Review System

The Wisconsin Department of Corrections (the "DOC") maintains an inmate complaint review system ("ICRS") to provide a forum for administrative complaints. Wis. Admin. Code § DOC 310.04. The ICRS "allow[s] inmates to raise in an orderly fashion issues regarding department policies, rules, living conditions, and employee actions that personally affect the inmate or institution environment, including civil rights claims." *Id.* § DOC 310.01(2)(a). Before commencing a civil action or special proceedings, "inmate[s] shall exhaust all administrative remedies the [DOC] has promulgated by rule." *Id.* § DOC 310.05.

There are two steps an inmate must take to exhaust the available administrative remedies. First, the inmate must file an offender complaint with the Institution Complaint Examiner ("ICE") within fourteen days of the events giving rise to the complaint. *Id.* § DOC 310.07(2). The ICE may

reject the complaint or return the complaint to the inmate and allow him or her to correct any issue(s) and re-file within ten days. *See id.* § DOC 310.10(5),(6). If the complaint is rejected, the inmate may appeal the rejection to the appropriate reviewing authority within ten days. *Id.* § DOC 310.10(10).[2] If the complaint is not rejected, the ICE issues a recommendation of either dismissal or affirmance to the reviewing authority. *Id.* § DOC 310.10(9),(12). The reviewing authority ("RA") will affirm or dismiss the complaint, in whole or in part, or return the complaint to the ICE for further investigation. *Id.* § DOC 310.11(2).

Second, if the ICE recommends, and the RA accepts, dismissal of the complaint, the inmate may appeal the decision to the Corrections Complaint Examiner ("CCE") within fourteen days. *Id.* §§ DOC 310.09(1), 310.12. The CCE issues a recommendation to the Secretary of the Department of Corrections, who may accept or reject it. *Id.* §§ DOC 310.12(2), 310.13. The inmate exhausts this administrative process when he or she receives the Secretary's decision. *Id.* § DOC 310.13(2),(3). If the inmate does not receive the Secretary's written decision within ninety days of the date of receipt of the appeal in the CCE's office, the inmate shall consider the administrative remedies to be exhausted. *Id.* § DOC 310.13(4).

2.  **RELEVANT FACTS**

Defendants' motion for summary judgment addresses the issue only of whether Plaintiff exhausted his administrative remedies as to the Eighth Amendment claim. The Court accordingly finds the following facts relevant to the disposition of the issue at hand.

---

[2]The ICRS defines a "reviewing authority" as "a person who is authorized to review and decide an inmate complaint." Wis. Admin. Code § DOC 310.03(15).

Page 4 of 12
Case 2:24-cv-00716-JPS    Filed 06/27/25    Page 4 of 12    Document 25

### 2.1 Plaintiff's Allegations

On March 16, 2024, at approximately 7:30 p.m., Plaintiff told Pachmayer that he was feeling suicidal. ECF No. 1 at 2. He then showed Pachmayer harmful objects, two magnets and a piece of sharp metal in his possession. *Id.* Plaintiff swallowed the magnet in front of Pachmayer while she observed him. *Id.* After a while, Plaintiff realized no one was coming and he began to cut himself with the metal until blood appeared. *Id.* Both Pachmayer and Alexander observed Plaintiff cutting himself and did not seek medical attention. *Id.* Plaintiff continued this behavior until third shift when a Doe defendant observed Plaintiff's cutting. *Id.* Plaintiff told Doe that he could not breath and that he needed medical attention. *Id.* After a few minutes of talking, Doe walked away and refused to get Plaintiff medical attention. *Id.* at 2–3. Plaintiff continued to hurt himself until approximately 11:30-11:50 p.m., when he fell into a deep sleep in his own blood. *Id.* at 3.

The following morning at approximately 8:00-9:00 a.m., Lieutenant Edwards came to do a wellness check. *Id.* Plaintiff explained what had happened and that he needed medical attention as soon as possible. *Id.* Plaintiff gave Edwards the last magnet that he had in his possession. *Id.* Edwards documented the incident with photographs and eventually cleaned Plaintiff up. *Id.*

### 2.2. Exhaustion Facts

Defendants filed proposed findings of fact in support of their motion. ECF No. 16. Plaintiff filed a response to Defendants' proposed facts. ECF No. 21. As such, the Court recites Defendants' proposed findings of fact with minimal changes, noting any factual disputes from Plaintiff where appropriate.

Plaintiff was an inmate in the custody of the Wisconsin Department of Corrections ("DOC") and was housed at Milwaukee Secure Detention Facility ("MSDF") at all times relevant to this complaint. Defendants Alexander and Pachmayer were employed at MSDF at the times relevant to the claims against them in this lawsuit. Ashley Schmidt is the ICE at MSDF. As an ICE, Ms. Schmidt reviews complaints submitted anonymously through the Inmate Complaint Tracking System to MSDF for alleged infractions against inmates. Ms. Schmidt makes recommendations about each complaint to the reviewing authority. Pursuant to Wisconsin Administrative Code DOC § 310.10, the ICE has the authority to either accept, return, or reject an inmate complaint.

Each housing unit at MSDF has their own ICE box, in which inmates may submit complaints about the institution. Inmates fill out the Inmate Complaint form, DOC-400, seal it in an envelope, and then place it into the ICE box on their unit. Ms. Schmidt picks up these complaints weekly from each unit. Ms. Schmidt processes approximately 50–100 inmate complaints in any given week. Ms. Schmidt does not regularly cross-reference each complaint submission to determine if a complaint was previously returned due to errors. Ms. Schmidt writes the date received on the top left side of each complaint submission and should a complaint be returned to the individual submitting it to fix errors, Ms. Schmidt gives explicit instructions that the original returned complaint be resubmitted upon the errors identified being fixed within ten days. The resubmitted complaint, with the original date received, notifies Ms. Schmidt that the complaint was returned, and helps her determine timeliness of the resubmission.

Plaintiff filed two complaints potentially related to the Eighth Amendment claim on which he was allowed to proceed.[3] Plaintiff submitted an inmate complaint, dated March 29, 2024, that was initially received on April 2, 2024. In that complaint, Plaintiff alleged that he was suicidal and attempted self-harm on March 16, 2024. Plaintiff's complaint was marked as received by the ICE in handwriting on the upper left-hand corner of the complaint with the date April 2, 2024.

This complaint was not accepted by the ICE and was dated as returned to Plaintiff on April 2, 2024. Plaintiff's complaint was not accepted because he did not sign each page, and he did not include relevant supporting documentation that he followed the chain of command. Plaintiff was given instructions to fix the errors noted by Ms. Schmidt and to resubmit his original returned complaint with documentation within ten days of April 2, 2024.

Plaintiff argues that although the ICE return letter shows that it was sent to him on April 2, 2024, nothing in the record proves that Plaintiff actually received the rejection letter within the ten days. Plaintiff maintains that that he did not timely receive the rejection of this submission. Plaintiff supports this assertion with an information request form, dated, April 8, 2024, that states, "I was wondering whats[sic] the update on my complaint I filed on 3-29-24 & incident on 3-16-29"? ECF No. 20-1 at 4. Prison officials

---

[3]Defendants state that Plaintiff filed only one complaint potentially related to the claim at issue. ECF No. 16 ¶ 13. The Court understands that Defendants phrase their proposed fact this way because they only consider submissions that were not returned to be complaints. *See id.* ¶ 14. However, the Court finds this terminology to be unnecessarily confusing. Plaintiff submitted two relevant inmate complaints; one, dated March 29, 2024, was returned and another, MSDF-2024-5517, that was rejected as untimely. *See id.* at 3–4.

responded the following day and informed Plaintiff that he was "sent a return letter complaint on 4/2/24." *Id.* It is undisputed that Plaintiff did not resubmit this returned complaint; however, the parties dispute whether Plaintiff timely received the rejection letter with instructions to resubmit.

Plaintiff also filed inmate complaint MSDF-2024-5517, which was received by the ICE on April 9, 2024. MSDF-2024-5517 was marked as received by the ICE in handwriting on the upper left-hand corner of the complaint with the date April 9, 2024. Plaintiff complained in MSDF-2024-5517 that staff did not stop him from self-harming activity on March 16, 2024. Plaintiff did not argue good cause for filing a late complaint in MSDF-2024-5517.

In response to MSDF-2024-5517, the ICE Examiner noted that Plaintiff was in segregation from March 17, 2024 until April 2, 2024. Complaints are picked up every Tuesday in segregation. The examiner noted in MSDF-2024-5517 that complaints were picked up on March 19, March 26, April 2, and April 9. MSDF-2024-5517 was rejected as untimely; the examiner found that Plaintiff had not provided good cause for the late filing. Plaintiff appealed the rejection of inmate complaint number MSDF-2024-5517.The reviewing authority affirmed the examiner's rejection of the inmate complaint, MSDF-2024-5517, as untimely.

3.   **ANALYSIS**

Defendants request summary judgment because Plaintiff failed to exhaust his administrative remedies as to the Eighth Amendment claim at issue in this case. ECF No. 15 at 1. Defendants argue that Plaintiff's two inmate complaints related to the issues of this case nonetheless failed to properly exhaust his administrative remedies. First, Defendants acknowledge that Plaintiff's submission, dated March 29, 2024, was

"arguably timely" because it was filed within the fourteen-day window from the date of the incident. *Id.* at 1, 6. However, Defendants argue this submission was not exhausted properly because Plaintiff did not resubmit the complaint after it was rejected for Plaintiff not signing every page and for failing to provide supporting documentation. *Id.* at 1–2. Defendants likewise argue that Plaintiff's second submission was not properly exhausted. Plaintiff submitted a new complaint, MSDF-2024-5517, which was received on April 9, 2024. *Id.* at 7. This complaint was rejected as untimely because it was filed more than fourteen days after the incident and because Plaintiff failed to show good cause for the late filing. *Id.*

Plaintiff argues that that he did not timely receive the rejection of his March 29, 2024 initial submission.[4] Plaintiff supports this assertion with his information request form, dated, April 8, 2024, stating, "I was wondering whats[sic] the update on my complaint I filed on 3-29-24 & incident on 3-16-29"? ECF No. 20-1 at 4. Prison officials responded the following day and informed Plaintiff that he was "sent a return letter complaint on 4/2/24." Plaintiff argues that because he did not have the original March 29, 2024 complaint to return, he instead submitted a new complaint. ECF No. 20 at 10. Plaintiff does not respond to Defendants' argument that his second submission, MSDF-2024-5517, did not fully exhaust his administrative remedies because it was rejected as untimely.

Here, the Court agrees with Defendants that Plaintiff's second submission, MSDF-2024-5517, did not exhaust his administrative remedies

---

[4]It is unclear from the record when Plaintiff got his original complaint back. Plaintiff notes in his opposition on that he received the original complaint after the ten-day deadline, so he was "forced to submit another complaint." *See* ECF No. 20 at 10.

because it was rejected as untimely. *See Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005) (noting that an inmate complaint that is properly "rejected" based on a procedural defect does not fulfill the exhaustion requirement.). However, the Court finds that a genuine issue of material fact exists regarding whether prisoner officials were responsible for mishandling Plaintiff's initial March 29, 2024 inmate complaint. Plaintiff argues that he did not receive the return letter with the original complaint in time to resubmit the complaint within the ten-day window. Plaintiff supports his position with the information request form from April 8, 2024, which indirectly suggests he did not receive the return letter. If this is true, Plaintiff's failure to timely submit the returned complaint would be no fault of his own. Where a prisoner "properly followed procedure and prison officials were responsible for the mishandling of his grievance, it cannot be said that [the plaintiff] failed to exhaust his administrative remedies." *Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006). "A remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance." *Id.* at 809. On the other hand, if Plaintiff did receive the return letter on April 2, 2024, and failed to resubmit the complaint as directed, he would not have exhausted his inmate complaint in this manner.

The Court acknowledges that there is certainly some discrepancy in Plaintiff's version of events. In his appeal of MSDF-2024-5517 Plaintiff wrote: "I turnt [sic] in my I.C.E. on 3-29-24 witch[sic] is within 14 days after my Incident. I received it back for correction on 4-2-24 & Re-sent it back out on 4-4-24." ECF No. 17-2 at 13. However, Plaintiff may have been inartfully attempting to explain that his March 29, 2024 complaint was timely and why his second complaint therefore should have been accepted. Plaintiff is a pro se formerly incarcerated person and the Court is obliged to liberally

construe his filings. Indeed, even trained attorneys do not always clearly communicate the message they intend. The fact remains that if Plaintiff did receive the return letter on April 2, 2024, it begs the question why Plaintiff would have inquired as to the status of his complaint on April 8, 2024. The Court is therefore satisfied that a genuine issue of disputed fact exists to preclude ruling on Defendants' motion for summary judgment on the issue of exhaustion at this time.

The Seventh Circuit has instructed that, when questions of fact exist regarding whether a prisoner exhausted the available administrative remedies, a court must conduct an evidentiary hearing to resolve the issue. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008) (*abrogated on other grounds by Perttu v. Richards*, No. 23-1324, 2025 WL 1698783 (U.S. June 18, 2025).[5] At the hearing, the court "may hear evidence, find facts, and determine credibility. After finding facts, the district court may allow the claim to proceed or dismiss it for failure to exhaust." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) (citations omitted).

4. **CONCLUSION**

For the reasons explained above, the Court finds that a genuine disputed issue of fact exists as to whether Plaintiff exhausted his administrative remedies. As such, to resolve Defendants' motion for summary judgment on the issue of exhaustion, the Court will set this matter

---

[5] The Supreme Court's recent decision held that "parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment." *Perttu*, 2025 WL 1698783 at *1. Here, the Court does not find that exhaustion question is intertwined with the Eighth Amendment claim at issue and therefore an evidentiary hearing before the Court is appropriate. However, to the extent either party believes the issues are intertwined, the parties must raise this issue prior to the hearing date.

for an evidentiary hearing. *See Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) ("Roberts may have been lying about having filed a grievance – but alternatively the defendants may have been lying when they denied there was any record of such a grievance. A swearing contest requires an evidentiary hearing to resolve, and none was held"); *Winston v. Clarke*, 746 F. App'x 561, 564 (7th Cir. 2018) ("Perhaps greater detail was needed before the court would credit Winston's account, but *Pavey* instructs that the solution is further record development—not summary judgment"). The Court will therefore hold an evidentiary hearing on **August 22, 2025, at 10:00 a.m., in Courtroom 425, 517 E. Wisconsin Ave., Milwaukee, WI 53202.** A witness list and any exhibits the parties wish to present at the hearing must be filed on or before **August 15, 2025.**

Accordingly,

**IT IS ORDERED** that the Court will conduct an evidentiary hearing on **August 22, 2025, at 10:00 a.m., in Courtroom 425, 517 E. Wisconsin Ave., Milwaukee, WI 53202**; A witness list and any exhibits the parties wish to present at the hearing must be filed on or before **August 15, 2025.**

Dated at Milwaukee, Wisconsin, this 27th day of June 2025.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge